**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ SEP 22 2017 ★

**BROOKLYN OFFICE**

JMK:WK/DE/MEB
F. #2016R00481

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

    - against –

LUIZ EDUARDO ANDRADE,

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

I N F O R M A T I O N

Cr. No. <u>17-497 (ENV)</u>
(T. 18, U.S.C., §§ 371, 981(a)(1)(C) and
3551 <u>et seq.</u>; T. 21, U.S.C., § 853(p))

THE UNITED STATES CHARGES:

        At all times relevant to this Information, unless otherwise stated:

<u>THE DEFENDANT AND REFERENCED INDIVIDUALS AND ENTITIES</u>

        1.      Petroleo Brasileiro S.A. - Petrobras ("Petrobras") was a Brazilian state-controlled oil company headquartered in Rio de Janeiro, Brazil, that operated to refine, produce and distribute oil, oil products, gas, biofuels and energy. At all relevant times, the Brazilian government directly owned more than 50% of Petrobras's common shares with voting rights. Petrobras was controlled by Brazil and performed government functions, and thus was an "agency" and "instrumentality" of a foreign government, as those terms are used in the Foreign Corrupt Practices Act ("FCPA"), Title 15, United States Code, Section 78dd-2.

        2.      Asphalt Company, a United States company whose identity is known to the United States, was one of the largest asphalt providers in the world, and was based in the United States. The FCPA, Title 15, United States Code, Section 78dd-2(h)(1), in relevant part, defines a "domestic concern" as "any individual who is a citizen, national, or resident of the

2

United States," and "any corporation, partnership, association, joint-stock company, business trust, unincorporated organization, or sole proprietorship which has its principal place of business in the United States, or which is organized under the laws of a State of the United States[.]" Therefore, at all relevant times, Asphalt Company was a "domestic concern," as that term is defined in the FCPA, Title 15, United States Code, Section 78dd-2(h)(1).

3. Asphalt Trading, a company whose identity is known to the United States, was one of a group of companies related to Asphalt Company. Asphalt Trading was incorporated under the laws of the Bahamas, but its principal place of business was in the same location as Asphalt Company's principal place of business in the United States. Therefore, at all relevant times, Asphalt Trading was a "domestic concern," as that term is defined in the FCPA, Title 15, United States Code, Section 78dd-2(h)(1). Asphalt Trading provided asphalt-related services to customers, including Petrobras.

4. The defendant LUIZ EDUARDO ANDRADE was a Brazilian national who, from approximately the end of 2009 through at least early 2016, worked in Brazil and the United States as an agent for Asphalt Trading. ANDRADE's responsibilities included seeking contracts for Asphalt Company and Asphalt Trading with Petrobras. At all relevant times, therefore, ANDRADE was an agent of a "domestic concern," as that term is defined in the FCPA, Title 15, United States Code, Section 78dd-2(h)(1).

5. Petrobras Official #1, an individual whose identity is known to the United States, was a high-ranking Director at Petrobras from approximately in or about 2004 through in

3

or about 2012. Petrobras Official #1 was a "foreign official" as that term is used in the FCPA, Title 15, United States Code, Section 78dd-2(h)(2).

6.      Petrobras Official #2, an individual whose identity is known to the United States, was a General Manager at Petrobras with responsibility over asphalt contracts beginning in or around September 2010. Petrobras Official #2 was a "foreign official" as that term is used in the FCPA, Title 15, United States Code, Section 78dd-2(h)(2).

7.      Brazilian Politician #1, an individual whose identity is known to the United States, was a member of the Brazilian congress. Brazilian Politician #1 was a "foreign official" as that term is used in the FCPA, Title 15, United States Code, Section 78dd-2(h)(2).

8.      Brazilian Politician #2, an individual whose identity is known to the United States, was a Minister in the Brazilian government. Brazilian Politician #2 was a "foreign official" as that term is used in the FCPA, Title 15, United States Code, Section 78dd-2(h)(2).

9.      Consultant #1, an individual whose identity is known to the United States, was a bribe intermediary and businessman from Rio de Janeiro, Brazil who was involved in arranging the payment of bribes to foreign officials by companies that wished to do business with Petrobras.

10.     Consultant #2, an individual whose identity is known to the United States, was a bribe intermediary who assisted Consultant #1 in arranging the payment of bribes to foreign officials by companies that wished to do business with Petrobras.

4

## THE FOREIGN CORRUPT PRACTICES ACT

11.     The FCPA was enacted by Congress for the purpose of, among other things, making it unlawful for certain classes of persons and entities to corruptly offer, promise, authorize, or pay money or anything of value, directly or indirectly, to a foreign government official for the purpose of obtaining or retaining business for, or directing business to, any person.

## THE BRIBERY SCHEME

12.     In or about 2010, the defendant LUIZ EDUARDO ANDRADE agreed with Consultant #1 to pay bribes to foreign officials on behalf of Asphalt Trading and associated companies so that they could obtain and retain business with Petrobras.

13.     Asphalt Trading and associated companies, through Consultant #1 and Consultant #2, thereafter made bribe payments to Petrobras Official #1, Petrobras Official #2, Brazilian Politician #1 and Brazilian Politician #2 by using, among other things: a United States bank account in the Southern District of Florida, a Swiss bank account, and shell companies incorporated in the Marshall Islands.

14.     The defendant LUIZ EDUARDO ANDRADE, as well as employees and executives at Asphalt Trading, were aware of, and approved, the bribe payments to the foreign officials in order to obtain and retain business for and on behalf of Asphalt Trading.

15.     As a result of the bribery scheme, Asphalt Company, Asphalt Trading and other related asphalt companies obtained numerous contracts with Petrobras with a value in excess of approximately $165 million.

CONSPIRACY

16.     The allegations contained in paragraphs one through 15 are realleged and incorporated as if fully set forth in this paragraph.

17.     In or about and between 2010 and 2017, both dates being approximate and inclusive, within the Southern District of Florida, the defendant LUIZ EDUARDO ANDRADE, together with others, did knowingly and willfully conspire to commit one or more offenses against the United States, to wit:

(a)     being an agent of a domestic concern, to make use of the mails and means and instrumentalities of interstate commerce corruptly in furtherance of an offer, payment, promise to pay, and authorization of the payment of any money, offer, gift, promise to give, and authorization of the giving of anything of value to a foreign official, to a foreign political party and official thereof, and to a person while knowing that all or a portion of such money and thing of value would be offered, given, and promised to a foreign official and to a foreign political party and official thereof, for purposes of: (i) influencing acts and decisions of such foreign official, foreign political party and official thereof in his, her or its official capacity; (ii) inducing such foreign official, foreign political party and official thereof, to do and omit to do acts in violation of the lawful duty of such official and party; (iii) securing any improper advantage; or (iv) inducing such foreign official, foreign political party and official thereof to use his, her or its influence with a foreign government and agencies and instrumentalities thereof to affect and influence acts and decisions of such government and agencies and instrumentalities, in order to assist Asphalt Company and others in obtaining and retaining business for and with, and

directing business to, Asphalt Company and other related companies, contrary to Title 15, United States Code, Section 78dd-2; and

(b)      while in the territory of the United States, to willfully make use of the mails and means and instrumentalities of interstate commerce corruptly in furtherance of an offer, payment, promise to pay, and authorization of the payment of any money, offer, gift, promise to give, and authorization of the giving of anything of value to a foreign official, to a foreign political party and official thereof, and to a person while knowing that all or a portion of such money and thing of value would be offered, given, and promised to a foreign official and to a foreign political party and official thereof, for purposes of: (i) influencing acts and decisions of such foreign official, foreign political party and official thereof in his, her or its official capacity; (ii) inducing such foreign official, foreign political party and official thereof to do and omit to do acts in violation of the lawful duty of such official and party; (iii) securing any improper advantage; and (iv) inducing such foreign official, foreign political party and official thereof to use his, her or its influence with a foreign government and agencies and instrumentalities thereof to affect and influence acts and decisions of such government and agencies and instrumentalities, in order to assist Asphalt Company and others in obtaining and retaining business for and with, and directing

business to, Asphalt Company and others, contrary to Title 15, United States Code, Section 78dd-3.

18.      In furtherance of the conspiracy and to achieve the objects thereof, the defendant LUIZ EDUARDO ANDRADE, together with others, committed and caused to be committed, among others, the following:

OVERT ACTS

(a)      On or about September 10, 2010, ANDRADE traveled from Brazil to the United States with Petrobras Official #2 and Consultant #2 to meet with employees and executives of Asphalt Company and Asphalt Trading.

(b)      On or about July 9, 2012, ANDRADE transferred approximately $56,546.50 to a shell company incorporated in the Marshall Islands.

(c)      In or around approximately 2014, ANDRADE, on behalf of Asphalt Trading, signed a backdated Consulting Service Agreement with a company used by Consultant #1 and Consultant #2.

(d)      In or around approximately 2014, ANDRADE signed backdated cover letters falsely indicating he had previously received certain reports and other work product from Consultant #1 when, in fact, he had not previously received them.

(Title 18, United States Code, Sections 371 and 3551 et seq.)

CRIMINAL FORFEITURE ALLEGATION

19.      The United States gives notice to defendant that, upon his conviction of the offense charged herein, the government will seek forfeiture in accordance with Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c),

8

which require any person convicted of such offense to forfeit any property, real or personal,

constituting, or derived from, proceeds obtained directly or indirectly as a result of such offense.

        20.     If any of the above-described forfeitable property, as a result of any act or

omission of the defendant:

        (a)     cannot be located upon the exercise of due diligence;

        (b)     has been transferred or sold to, or deposited with, a third party;

        (c)     has been placed beyond the jurisdiction of the court;

        (d)     has been substantially diminished in value; or

        (e)     has been commingled with other property which cannot be

subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to

seek forfeiture of any other property of the defendant up to the value of the above forfeitable

property.

        (Title 18, United States Code, Section 981(a)(1)(C); Title 21, United States Code,

Section 853(p))

BRIDGET M. ROHDE
Acting United States Attorney
Eastern District of New York

SANDRA L. MOSER
Acting Chief, Fraud Section
Criminal Division, Dept. of Justice

F. #2016R00481

FORM DBD-34
JUN. 85

No.

# UNITED STATES DISTRICT COURT
### EASTERN *District of* NEW YORK
### CRIMINAL DIVISION

## THE UNITED STATES OF AMERICA

*vs.*

*LUIZ EDUARDO ANDRADE,*

Defendant.

# INFORMATION

(T. 18, U.S.C., §§ 371, 981(a)(1)(C) and 3551 et seq.; T. 21, U.S.C., § 853(p))

*A true bill.*

_____
*Foreperson*

*Filed in open court this* _____ *day,*

*of* _____ *A.D. 20* ____

_____
*Clerk*

*Bail, $* _____

_____

***Whitman G.S. Knapp and Mark E. Bini, Assistant U.S. Attorneys (718) 254-7000***
***Derek J. Ettinger, U.S. Department of Justice Trial Attorney, (202) 514-2000***